### IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

**MARCUS WRIGHT**                                                     **PLAINTIFF**
**ADC #122117**

**v.**                          **No: 4:21-cv-00280-KGB-PSH**

**JAMES GIBSON, *et al.***                                     **DEFENDANTS**

### PROPOSED FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following Recommendation has been sent to United States District Judge Kristine G. Baker.  You may file written objections to all or part of this Recommendation.  If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation.  By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

### I.  Introduction

Plaintiff Marcus Wright, an inmate at the Arkansas Division of Correction's ("ADC") Varner Supermax Unit, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 on April 9, 2021 (Doc. No. 2).  Wright's application to proceed *in forma pauperis* was granted, and service was ordered on defendants James Gibson and

James Shipman Jr. (the "Defendants") (Doc. No. 3). Wright subsequently amended his complaint (Doc. No. 18).

The Defendants move to dismiss Wright's claims against them for failure to state a claim upon which relief may be granted. Doc. Nos. 19-20. They also raise the defense of qualified immunity. *Id.* Although he was notified of his opportunity to do so, Wright did not file a response to the Defendants' motion. He did however, file responsive pleadings to a similar motion filed by the Defendants before he amended his complaint. *See* Doc. Nos. 14-16. As explained herein, the undersigned finds that the Defendants are entitled to qualified immunity and recommends that the Defendants' motion to dismiss be granted.

## II. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a court to dismiss a claim on the basis of a dispositive issue of law. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). If, as a matter of law, "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one. *Id.* at 327 (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *see also O'Neal v. State Farm Fire & Cas. Co.*, 630 F.3d 1075, 1077 (8th Cir. 2011). In *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the Supreme Court emphasized that when ruling upon a motion to dismiss in a §

1983 action, a *pro se* complaint must be liberally construed and held to less stringent standards than formal pleadings drafted by lawyers. However, such liberal pleading standards apply only to a plaintiff's factual allegations. *Neitzke v. Williams*, 490 U.S. 319, 330 n. 9 (1989).

When considering a motion to dismiss under Rule 12(b)(6), the court must accept as true all of the factual allegations contained in the complaint and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Young v. City of St. Charles, Mo.*, 244 F.3d 623, 627 (8th Cir. 2001). The court reads the complaint as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). The factual allegations in the complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In addition to the complaint, the court may consider matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999); *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007).

"[D]efendants seeking dismissal under Rule 12(b)(6) based on an assertion of qualified immunity 'must show that they are entitled to qualified immunity on the face of the complaint.'" *Carter v. Huterson*, 831 F.3d 1104, 1107 (8th Cir. 2016)

(quoting *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005)); *see also Greenman v. Jessen,* 787 F.3d 882, 887 (8th Cir. 2015) (upholding grant of qualified immunity in lawsuit in which district court considered "matters of public record").

### III. Analysis

#### A.    *Complaint Allegations*

Between March and August 2020, Wright was an inmate at Varner SuperMax, where he was housed in a one-man cell.  Doc. No. 18 at He asserts that because he was in restrictive housing, the only contact he had with other individuals was when he was escorted to yard call, classifications, haircuts, sick-call, medical visits, or when he received commissary and meals.  *Id.* at 4-5.  Wright generally alleges that the Defendants failed to protect him from a substantial risk of serious harm and were deliberately indifferent to his health and safety by failing to take appropriate precautions to avoid the spread of the COVID-19 virus during this time period.  *Id.* at 4-10.

Wright specifically claims that despite the Defendants' receipt of COVID-19 guidance from the Centers for Disease Control (CDC) in March of 2020, and despite Governor Hutchinson's mask mandate allegedly issued in April 2020,[1] he and other

---

[1] The Court takes judicial notice that Governor Hutchinson did not implement a mask mandate until July 16, 2020.  Executive Order 20-43 available at: https://governor.arkansas.gov/images/uploads/executiveOrders/EO_20-43.pdf.  *See* https://governor.arkansas.gov/our-office/executive-orders/P60 for list of Governor Hutchinson's executive orders.

inmates in restrictive housing were not given masks until August 2020, after testing

positive for the virus. *Id.* at 5-8. He claims that the Defendants did not implement

the Governor's mask mandate for those confined to restrictive housing at the Varner

Supermax because they were mostly isolated from others.[2] *Id.* at 6. Wright also

claims he suffers from high blood pressure and type 1 diabetes which make him

more vulnerable to the COVID-19 virus. *Id.* at 5. He asserts that the Defendants

knew or *should have known* that he had these pre-existing conditions, and should

have provided him with masks because of his vulnerability. *Id.*

Wright alleges that he submitted requests for interviews to the Defendants and

to WellPath, the ADC's medical provider, in April and May of 2020 because he

began to experience COVID-19 symptoms. *Id.* at 6-7. He claims that Sondra Parker

on behalf of Wellpath responded to both requests. *Id.* Wright also alleges he

submitted sick calls and advised non-party nurses of his symptoms. *Id.* He

complains that he did not receive a response to his requests from the Defendants. *Id.*

Wright states that in August of 2020, four months later, he tested positive for

COVID-19 and was finally issued two KN-95 masks and placed on quarantine status

(meaning he was confined to his cell at all times). *Id.* at 8. Wright believes he

contracted COVID-19 from non-party officers who tested positive for COVID-19

---

[2] Wright affirms that inmates in the general population and ADC staff and medical
personnel were provided masks. Doc. No. 18 at 6.

but were allowed to continue working; he claims that the Defendants were aware that these officers had tested positive for the virus but continued to interact with high-risk inmates. *Id.* at 8-9.

## B.    *Judicially Noticed Facts*

The Defendants ask the Court to take judicial notice of certain findings of fact relevant to the claims in this case as found by U.S. District Judge Kristine G. Baker in her decision denying inmate plaintiffs' motion for preliminary injunctive relief in *Frazier v. Kelley, et al.*, 460 F. Supp. 3d 799, 817 (E.D. Ark. 2020) (Case No. 4:20-CV-434, Doc. No. 68).  Judge Baker's thorough order reviews and identifies in detail the ADC's response to the COVID-19 pandemic. [3]  The Court notes that it may take judicial notice of matters of public record in reviewing a Rule 12(b)(6) motion to dismiss.  *See Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007).  Matters of public record can include pleadings or orders filed with the court.  *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  The Court takes judicial notice of the following facts which are relevant to this case.

The CDC issued its Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities on March 23, 2020.  460 F. Supp. 3d at 811.  These guidelines were developed, in part, to help correctional

---

[3] The Court notes that Defendants Gibson and Shipman were not defendants in the *Frazier* case, and that *Frazier* involved conditions at several ADC units, including the Varner Supermax Unit.

facilities "ensure the protection, health, and safety of incarcerated people." *Id.* On March 27, 2020, the Arkansas Department of Health ("ADH") provided its recommendations entitled "COVID-19 Guidance for State Correctional Facilities and Local Detention Facilities." *Id.* at 819. The ADH subsequently issued additional guidance for correctional facilities. *Id.*

In its March 27 guidance, the ADH recommended the use of personal protective equipment ("PPE") to inmates and staff to the extent possible. *Id.* at 821. The ADC immediately began to manufacture and distribute cloth masks for inmates and staff, purchased additional PPE on the open market, and obtained PPE from ADH. *Id.* Every staff member and inmate in general population was supplied with one mask first, and then the ADC continued producing masks to ensure each inmate in general population could have a second mask. *Id.* Inmates in isolation were not given masks at the start of the pandemic. *Id.* This is because CDC guidance at the time stated that masks do not protect the mask-wearing individual from the risk of contracting the virus, but instead, protected others by preventing the mask-wearing individual from spreading the virus, should they be COVID-positive. *Id.* Because inmates in restrictive housing do not come into contact with other inmates and only have limited exposure to staff (who were wearing masks) they did not require masks under this guidance. *Id.* ADC staff were directed to wear masks and gloves when interacting with inmates, including those in restrictive housing. *Id.* Additionally,

ADC ordered enhanced cleaning and disinfecting procedures, and provided inmates in restrictive housing with their own cleaning products twice a week to sanitize their cells. *Id.* at 822.

With regard to staff, the ADC directed staff to remain home if sick. *Id.* at 819. The ADC implemented wide-spread COVID-19 testing on employees and conducted contact-tracing of people who had contact with infected staff. *Id.* at 826. Staffing decisions about COVID-positive but asymptomatic employees were made upon guidance with the ADH. *Id.* at 826-27. Certain COVID-19 positive, asymptomatic staff reported to work. *Id.* at 827.

Medical care for inmates is provided by WellPath, LLC. *Id.* at 812. In March 2020, the ADC suspended medical copays inmates would normally have incurred from a health visit. *Id.* at 825. Inmates experiencing symptoms of COVID-19 were directed to seek immediate treatment from WellPath for free. *Id.*

## C.    *Qualified Immunity*

Defendants assert they are entitled to qualified immunity and therefore immune from suit. Qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not fact, for the court to decide. *Kelsay v. Ernest*, 933 F.3d 975,

981 (8th Cir. 2019). "And, because it is 'an immunity from suit' rather than a mere defense, whether qualified immunity applies should be resolved 'at the earliest possible stage in the litigation.'" *Hill v. Page*, No. 3:21-CV-00046-BRW-JJV, 2021 WL 2677359, at *2 (E.D. Ark. June 8, 2021), *report and recommendation adopted,* No. 321CV00046BRWJJV, 2021 WL 2666851 (E.D. Ark. June 29, 2021), *aff'd,* No. 21-2782, 2021 WL 6808426 (8th Cir. Dec. 23, 2021) (citing *Johnson v. Moody*, 903 F.3d 766, 772 (8th Cir. 2018); *Duhe v. City of Little Rock*, 902 F.3d 858, 861 (8th Cir. 2018)).

To determine whether a defendant is entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct. *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015). Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In this case, the Court concludes that Wright cannot establish a constitutional violation based on the facts he alleges together with the judicially-noticed facts regarding the ADC's initial response to the COVID-19 virus. The Court further finds that even if Wright could establish a constitutional violation,

there was no clearly established law in March or April of 2020 outlining what constituted an adequate response to the COVID-19 pandemic.

### 1.    Constitutional Violation

The Eighth Amendment requires prison officials to protect inmates from a substantial risk of harm to their health. *Helling v. McKinney*, 509 U.S. 25, 33 (1993). To prove an Eighth Amendment violation, a plaintiff must show (1) an "objectively, sufficiently serious" deprivation, meaning that he was incarcerated under conditions posing a substantial risk of serious harm, and (2) that the defendant was deliberately indifferent to the substantial risk of serious harm. *Farmer v. Brennan,* 511 U.S. 825, 832 (1994); *Schoelch v. Mitchell*, 625 F.3d 1041 (8th Cir. 2010). The Eighth Circuit has held that a "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). Even where prison officials or medical providers know of a substantial risk to inmate health or safety, they are not liable, "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. "The level of culpability required to demonstrate deliberate indifference on the part of prison officials is equal to criminal recklessness." *Holden v. Hirner*, 663 F.3d 336, 343 (8th Cir. 2011).

Wright alleges that Gibson and Shipman failed to follow applicable CDC guidelines and Governor Hutchinson's mask mandate by not providing masks to inmates in restricted housing at the Varner Unit. However, Governor Hutchinson did not issue a mask mandate until July of 2020. *See* footnote 1, *supra*. And, as Judge Baker previously found in the *Frazier* case, the ADC implemented Arkansas-specific guidance provided by the ADH based on the CDC's recommendations. 460 F. Supp. 3d at 819. That guidance instructed prisons to provide masks to inmates "to the extent possible" given the shortage of available masks at that time. *Id.* at 821. The ADC did not provide masks to inmates in restricted housing because they had limited interaction with others and because the CDC had advised that masks protect others from the person wearing the mask, not vice versa. *Id.* Because Gibson and Shipman were merely implementing the ADC's policies which followed applicable ADH guidance at that time, any decision on their part to deny Wright a mask cannot constitute deliberate indifference because they responded reasonably to the risk of harm based on the knowledge they had at that time. The same is true of Wright's allegation that Gibson and Shipman allowed guards who tested positive for the virus to return to work; it is undisputed that this occurred, but it was allowed in accordance with existing ADH and CDC guidance available at that time. *Id.* at 826-27.

Additionally, Wright has not alleged sufficient involvement on the part of Gibson and Shipman to establish that they were subjectively deliberately indifferent to a substantial risk of harm to Wright.  A defendant may not be held liable under § 1983 unless he was personally involved in or had direct responsibility for the constitutional violation.  *See Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir. 2006) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.") (internal quotations and citations omitted).  Wright alleged that Gibson and Shipman made the policy decision to deny him a face mask and to allow guards who tested positive to return to work if they had no symptoms.  However, taking into account the facts already established in the *Frazier* case, it is clear that these decisions were prison-wide policy decisions made by the ADC, not Shipman or Gibson.  Moreover, Wright does not allege that he requested a face mask from Gibson or Shipman, or personally made either of them aware of his preexisting health conditions.  And while he alleges that he submitted requests for interviews to medical personnel as well as Gibson and Shipman regarding his COVID-19 symptoms in April and May of 2020, their failure to respond to those requests does not indicate that they were deliberately indifferent to his medical needs.  Rather, as Wright acknowledges, medical staff who are responsible for responding to such requests responded to his requests.

In sum, Wright fails to state a viable constitutional claim for deliberate indifference on the part of Gibson or Shipman, and they are therefore entitled to qualified immunity.

2.  Clearly Established Federal Law

Even if the ADC's response to the COVID-19 pandemic were found to be inadequate and a constitutional violation, the Defendants are entitled to qualified immunity because their actions in implementing that response did not violate clearly established federal law. "The pertinent inquiry is whether the state of the law at the time gave the official 'fair warning' that such conduct was unlawful in the situation he confronted."[4] *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015) (citing *Hope v. Pelzer,* 536 U.S. 730, 741 (2002); *Saucier v. Katz,* 533 U.S. 194, 202 (2001)).  For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (citation and internal quotations omitted).  In other words, "[o]fficials are not liable for bad guesses in gray areas; they are liable for

---

[4] In applying qualified immunity, the Eighth Circuit Court of Appeals subscribes to "a broad view of the concept of clearly established law, and we look to all available decisional law, including decisions from other courts, federal and state, when there is no binding precedent in this circuit." *Turner v. Arkansas Ins. Dep't*, 297 F.3d 751, 755 (8th Cir. 2002); *Vaughn v. Ruoff*, 253 F.3d 1124, 1129 (8th Cir. 2001).

transgressing bright lines." *Moore v. City of Desloge, Mo.*, 647 F.3d 841, 846 (8th Cir. 2011) (citing *Ambrose v. Young*, 474 F.3d 1070, 1077 (8th Cir. 2007)).

The Court has found no caselaw clearly establishing what a correctional facility's proper response to COVID-19 is now, and such caselaw certainly did not exist in the Spring of 2020 when COVID-19 infections first began to appear in Arkansas. There is existing law holding that prison officials must take some efforts to stop the spread of infectious disease. *See e.g., DeGidio v. Pung,* 920 F.3d 525, 529-531 (8th Cir. 1990) (affirming district court's findings that prison officials' four-year delay in implementing protocol for tuberculosis testing and control constituted deliberate indifference); *Butler v. Fletcher*, 465 F.3d 340 (8th Cir. 2006) (affirming decision that prison officials who issued policies and procedures for the diagnosis, segregation, and treatment of inmates with tuberculosis infections were not deliberately indifferent to an unreasonable risk of harm). Likewise, in cases concerning the control of COVID-19, courts have found that prison officials' efforts to control the virus, even if imperfect, negated a finding of deliberate indifference. *See e.g., Valentine v. Collier,* 956 F.3d 797, 802–03 (5th Cir. 2020) (finding that plaintiffs were unlikely to show that prison officials were deliberately indifferent to the risk of COVID-19 where they took "measures—informed by guidance from the CDC and medical professionals—to abate and control the spread of the virus"); *Money v. Pritzker*, 453 F. Supp. 3d 1103, 1132 (N.D. Ill. 2020) (Court found no

deliberate indifference where defendants were "trying, very hard, to protect inmates against the virus and to treat those who have contracted it."); *see also Tate v. Arkansas Dep't of Corr.,* No. 4:20-CV-558-BSM-BD, 2020 WL 7378805, at *11 (E.D. Ark. Nov. 9, 2020), *report and recommendation adopted,* No. 4:20-CV-00558-BSM, 2020 WL 7367864 (E.D. Ark. Dec. 15, 2020) ("The issues and challenges posed by COVID-19 are unlike any other in the modern era.  COVID-19 is, by definition, a 'novel' coronavirus.  Accordingly, the Court cannot conclude that reasonable officials would have known that the response to COVID-19 of officials at Cummins violated Plaintiffs' clearly established constitutional rights.").

The Court has located no case finding that a prison official violated an inmate's Eighth Amendment rights by not providing a mask to inmates housed in isolation or allowing staff approved by the governing Department of Health to return to work.  Accordingly, even if the facts alleged by Wright supported a finding that his constitutional rights were violated, the Defendants are entitled to qualified immunity because no "robust 'consensus of cases of persuasive authority'" finding such a right existed as of April or May of 2020.  *See Ashcroft v. al-Kidd,* 563 U.S. 731, 742 (2011) (quoting *Wilson v. Layne,* 526 U.S. 603, 617 (1999)).

## IV.  Conclusion

For the reasons stated herein, it is recommended that the Defendants' motion to dismiss (Doc. No. 19) be granted.  Wright's claims should be dismissed without

prejudice for failure to state a claim upon which relief may be granted, and dismissal of this action should be considered a "strike" within the meaning of 28 U.S.C. § 1915(g).  Alternatively, Wright's claims should be dismissed because he cannot establish that Defendants violated his clearly established constitutional rights.

IT IS SO RECOMMENDED this 2nd day of  May, 2022.

_____
UNITED STATES MAGISTRATE JUDGE